UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHERINE J. LEE,

                                    Plaintiff,

                vs.                                          5:03-CV-1329 (Suit I)

CITY OF SYRACUSE; CITY OF SYRACUSE
POLICE DEPARTMENT; CHIEF OF POLICE
DENNIS DUVAL, in his individual and official
capacity; FORMER CHIEF OF POLICE JOHN
FALGE, in his individual and official capacity;
MICHAEL KERWIN, in his individual and
official capacity; MARK McARDLE, in his individual
and official capacity; CAPTAIN PUGH, in his
individual and official capacity; DAN BOYLE,
in his individual and official capacity; DEPUTY
CHIEF HANNA, in his individual and official
capacity; JOHN KAUFFMAN, in his individual
and official capacity; CAPTAIN THOMAS
GALVIN, in his individual and official capacity,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHERINE J. LEE,
                                    Plaintiff,

                vs.                                          5:06-CV-949 (Suit II)

CITY OF SYRACUSE; CITY OF SYRACUSE
POLICE DEPARTMENT; CHIEF OF POLICE
GARY MIGUEL, in his individual and official
capacity; STEVEN THOMPSON, in his individual
capacity; MICHAEL KERWIN, in his
individual and official capacity; CAPTAIN
THOMAS GALVIN, in his individual and official
capacity; MICHAEL RATHBUN, in his individual
capacity; RICHARD DOUGLAS, in his individual
and official capacity; and MICHAEL HEENAN,
in his individual and official capacity,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

BOSMAN LAW OFFICE                         A.J. BOSMAN, ESQ.
Attorney for Plaintiff
6599 Martin Street
Rome, NY 13440

CORPORATION COUNSEL                      JOSEPH FRANCIS BERGH, ESQ.
CITY OF SYRACUSE                          ROBERT P. STAMEY, ESQ
Attorneys for the Defendants
233 East Washington Street
Room 301 City Hall
Syracuse, NY 13202

HANCOCK, ESTABROOK LAW FIRM               JOHN G. POWERS, ESQ.
Attorneys for Defendant Douglas           LINDSEY H. HAZELTON, ESQ.
1500 AXA Tower I
Syracuse, NY 13221


DAVID N. HURD
United States District Judge

## TABLE OF CONTENTS

**I. INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 5 -**

**II. FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 6 -**

**III. DISCUSSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 15 -**

    **A. Summary Judgment Standard**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 15 -**

    **B. Statement of Material Facts**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 16 -**

    **C. City of Syracuse Police Department (Suits I and II)**. . . . . . . . . . . . . . . . **- 19 -**

    **D. Title VII (Suit II)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 20 -**

        **1. Individual Liability**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 20 -**

        **2. Gender Discrimination (First Cause of Action in Suit II)**. . . . . . **- 20 -**

            **a. Overtime Assignment**. . . . . . . . . . . . . . . . . . . . . . . **- 22 -**

            **b. Use of Work-Time to Attend Appointments**. . . . **- 23 -**

            **c. Discipline for Violation of SPD Rules**. . . . . . . . . **- 23 -**

        **3. Retaliation (Third Cause of Action in Suit II)**. . . . . . . . . . . . . . **- 27 -**

        **4. Hostile Work Environment (Second Cause of Action**
           **in Suit II)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 30 -**

    **E. Americans with Disabilities Act (Fourth Cause of Action in Suit I)**. . . . **- 34 -**

        **1. Individual Liability**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 34 -**

        **2. Title I Claim**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 34 -**

        **3. Title II Claims**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 38 -**

    **F. Section 1983 (Suits I and II)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 39 -**

        **1. Equal Protection Claims (Sixth Cause of Action in Suit I**
           **and Fourth and Fifth Causes of Action in Suit II)**. . . . . . . . . . . **- 40 -**

2. **Conspiracy (Tenth Cause of Action in Suit II)** . . . . . . . . . . . . . **- 40 -**

3. **First Amendment (Seventh Cause of Action in Suit I and
   Fourth and Ninth Causes of Action in Suit II)**. . . . . . . . . . . . . **- 41 -**

   a. **Individual Defendants and Qualified Immunity**. **- 41 -**

   b. **Municipal Liability** . . . . . . . . . . . . . . . . . . . . . . . . **- 43 -**

G. **Equal Pay Act (Second Cause of Action Suit I and Sixth Cause
   of Action Suit II)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 44 -**

H. **New York Human Rights Law (Fifth Cause of Action in Suit I
   and Seventh Cause of Action in Suit II)** . . . . . . . . . . . . . . . . . . . . . . . **- 45 -**

   1. **Notice of Claim Requirement for NYHRL Claims**. . . . . . . . . . . **- 46 -**

   2. **Standard of Review and Statute of Limitations for
      NYHRL Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 46 -**

   3. **Gender Discrimination**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 47 -**

      a. **Overtime Assignments**. . . . . . . . . . . . . . . . . . . . . **- 48 -**

      b. **Seizure of Plaintiff's Weapon**. . . . . . . . . . . . . . . . **- 48 -**

      c. **Medical Evaluations and Request for
         Medical Records**. . . . . . . . . . . . . . . . . . . . . . . . . **- 49 -**

      d. **Disciplinary Actions Taken Towards Plaintiff**. . **- 49 -**

   4. **Retaliation Claims (Suit II)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 49 -**

   5. **Hostile Work Environment Claim (Suit II)** . . . . . . . . . . . . . . . . . **- 50 -**

   6. **Individual Defendants**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 50 -**

   7. **Work Environment, Retaliation, and Disability
      Discrimination (Suit I)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 50 -**

I. **Breach of Contract Claim (Eighth Cause of Action in Suits I and II)**. . . **- 51 -**

IV. **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 52 -**

- 4 -

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiff Katherine Lee ("plaintiff"), a police officer with the Syracuse Police Department ("SPD"), commenced actions on October 31, 2003 ("Suit I" or "5:03-CV-1329") and August 4, 2006 ("Suit II" or "5:06-CV-949") against the City of Syracuse, the SPD, and a number of plaintiff's supervisors and fellow employees.[1]  Defendants City of Syracuse, the SPD, Michael Kerwin, and Thomas Galvin are sued in both actions.  Defendants John Falge, Mark McArdle, Captain Ronald Pugh, Daniel Boyle, Deputy Chief Hanna, John Kaufman, and Dennis Duval are named in Suit I only.  Defendants Gary Miguel, Steve Thompson, Michael Rathbun, Richard Douglas,[2] and Michael Heenan are named in Suit II only.  Plaintiff's claims were brought pursuant to Title VII of the Civil Rights Acts of 1964 and 1991, the Americans with Disabilities Act, the Equal Pay Act, 42 U.S.C. § 1983, the New York Human Rights Law ("NYHRL"), and state common law.

Plaintiff's Title VII claims for discrimination and retaliation in Suit I were dismissed.  See Lee v. City of Syracuse, No. 5:03-CV-1329, slip op. at 6-9 (N.D.N.Y. Feb. 15, 2005), Dkt. No. 33 (dismissing plaintiff's first and third causes of action).  Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 for the remaining claims in Suit I.

---

[1] The individual defendants serve different roles at the SPD.  Defendants Duval, Falge, Miguel, and Thompson were Chief of Police. Defendants Boyle, Hanna, and Heenan were Deputy Chiefs.  Defendant Kerwin was a Captain and/or Inspector. Defendants Pugh, Galvin, and Rathbun were Captains.  Defendant McArdle was a supervisor.  Defendants Kaufman and Douglas were fellow police officers.

[2] Defendant Douglas is represented by separate counsel.  Where his arguments address claims that are viable, they will be addressed independently.  However, where the arguments made by defendants in general are sufficient to address the claims against defendant Douglas, his separate arguments will not be addressed.

Defendants also move for summary judgement for all causes of action in Suit II.   Plaintiff opposes defendants' motions.[3]  Oral arguments were heard on February 8, 2008 for Suit I and on June 13, 2008 for Suit II.  Decision was reserved for both motions.  Because these actions involve common questions of law and fact, they are now consolidated pursuant to Federal Rule of Civil Procedure 42(a).  The extensive discovery involved in these two suits, the number of causes of actions, and deficient citations to the record have caused the delay in issuing this opinion.

## II. FACTS

Plaintiff is a member of the SPD and has been employed there since 1989.  Plaintiff was on medical leave from November 15, 2000 until May 28, 2001.  Plaintiff returned to work in May 2001 and remained on light duty until September 2002.  On September 26, 2002, plaintiff was placed on administrative leave.  Plaintiff remained on administrative leave until June 2003 when she returned to full-duty.  On September 1, 2006, plaintiff was placed on medical leave for neck and back injuries related to an on-duty car accident that occurred in May of 2004, and although still employed as an SPD police officer, she has not returned to work as stated in her affidavit dated January 22, 2008.  As a police officer, plaintiff was paid at the same wage rate as other police officers of the same rank and experience.  Plaintiff was also paid when she was on medical and administrative leave, although she could not work overtime when she was on leave because her secondary work permits were revoked.

---

[3] Plaintiff also includes in her motion papers a request for sanctions and attorneys' fees or an order compelling discovery.   This is not the proper method for seeking compliance with discovery and will not be addressed.

On November 11, 2000, a physical altercation occurred between plaintiff and defendant Kaufman in the Town of La Fayette while they were off-duty.  Plaintiff called the New York State Police but did not have defendant Kaufman arrested.  Plaintiff was transferred from the Second Platoon to the First Platoon on November 14, 2000.  On November 15, 2000, plaintiff was relieved of her gun.  That same day, plaintiff was examined by Dr. Saundra Barnett-Reyes, a private psychiatrist.  Dr. Barnett-Reyes found plaintiff incapacitated due to depression and anxiety secondary to domestic assault.  Dr. Barnett-Reyes sent a facsimile to the Personnel Division stating that plaintiff should remain on medical leave from November 15, 2000 until November 29, 2000.  On November 28, 2000, Dr. Barnett-Reyes sent another letter to the Personnel Division stating that plaintiff should remain on medical leave until January 2, 2001.  On December 27, 2000, Dr. Barnett-Reyes faxed a third letter to the Personnel Division stating that plaintiff should not return to work until February 1, 2001.  In January 2001, Dr. Barnett-Reyes suggested plaintiff seek a second opinion from Dr. Norman J. Lesswing, a private licensed clinical psychologist.  Defendant SPD agreed to this examination and plaintiff was evaluated by Dr. Lesswing.

On January 19, 2001, Dr. Barnett-Reyes wrote a letter to the Personnel Division stating that plaintiff could return to work on February 1, 2001.  She also stated that plaintiff should work light duty and only during the day.  Dr. Lesswing agreed that this was a reasonable accommodation for plaintiff.  Dr. Barnett-Reyes's letter did not include any test results or documentation regarding plaintiff's status.  Sergeant Susan Adams and Captain John Agne contacted plaintiff and asked her to release her records from Dr. Lesswing.  Plaintiff did not release Dr. Lesswing's psychological tests.  Because defendants regarded the information provided by Dr. Barnett-Reyes as insufficient to make a determination as to

plaintiff's capacity to return to work, they had Dr. David Simon, a physician from the police department, interview plaintiff.  Dr. Barnett-Reyes sent another letter on January 30, 2001 stating why plaintiff was fit to return to light duty during the daytime only.

Plaintiff met with Dr. Simon on January 31, 2001.  On February 19, 2001, the Personnel Division received Dr. Simon's report regarding plaintiff.  In his report, Dr. Simon recommended that plaintiff should not have access to guns because of her medication and that defendant SPD should get an independent opinion from a psychiatrist because Dr. Barnett-Reyes had not provided an opinion of whether plaintiff could handle a gun.  Plaintiff was not allowed to work at this time.

On February 14, 2001, plaintiff was transferred from the Uniform Bureau, Patrol Division to the Administrative Bureau, Personnel Division.  On March 20, 2001, a settlement was agreed on at an arbitration hearing whereby plaintiff was required to submit evidence showing that she had received medical clearance to return to work, and defendant City of Syracuse had the right to accept the evidence or require plaintiff to submit to an additional examination.  If medical opinions conflicted, the dispute was to be resolved by either a mutually agreed upon medical provider or the arbitrator.

Plaintiff was examined by Dr. Joseph T. Himmelsbach, a private psychologist, on April 20, 2001.  Dr. Himmelsbach recommended that plaintiff remain on medical leave for sixty days after which she should be reassessed.  Plaintiff returned to light duty in the Records Division on May 28, 2001.  Plaintiff's gun was not returned to her.  On July 10, 2001, Dr. Himmelsbach examined plaintiff again.  He recommended that she remain on light duty for another sixty to ninety days.  His letter also stated, "[i]t may also be indicated at this time to review and modify the conditions of her returning to work as regards to weapons and

uniform." Ex. 13 to Pl.'s Aff. in Opp'n to Summ. J., 5:03-CV-1329, Dkt. No. 118-14, 3.

Plaintiff continued to work on light duty.

On January 9, 2002, Dr. Barnett-Reyes sent a letter to the Personnel Division

stating that plaintiff could return to full-duty on January 30, 2002. After reviewing Dr. Barnett-

Reyes's letter on January 23, 2002, Dr. Simon expressed his concerns regarding plaintiff's

return to full-duty and recommended an evaluation from an independent psychiatrist. On

February 1, 2002, Dr. Simon met with plaintiff. Dr. Simon stated that he was concerned

about plaintiff's access to guns because the medications she was taking–Klonopin and

Depakote–could affect alertness, judgment, and reaction time. He recommended that

plaintiff not have her gun returned at that time.

Plaintiff continued to work on light duty until September 2002. On September 26,

2002, plaintiff asserts that defendant Kerwin insisted that plaintiff release her records from

Dr. Lesswing. Plaintiff refused to release these records. According to plaintiff, defendant

Kerwin threatened to fire her if she did not release the records and ordered her to leave the

building. On that day, plaintiff was placed on indefinite administrative leave. On April 24,

2003, plaintiff filed her Equal Employment Opportunity Commission ("EEOC") complaint.

Plaintiff brought a grievance against defendant SPD on an unrelated matter through

her union, the Syracuse Police Benevolent Association, Inc ("Union"). Defendant SPD's

refusal to allow plaintiff to return to full-duty with her gun was discussed at the arbitration

hearing. The arbitrator chose a psychiatrist to evaluate plaintiff and determine whether she

should have her gun returned. Defendant City of Syracuse agreed to accept the decision of

the psychiatrist. On June 16, 2003, plaintiff was evaluated by Dr. Brian Joseph. Dr. Joseph

determined that plaintiff was fit for duty, capable of handling a gun, and did not need further psychiatric treatment.  Plaintiff returned to full-duty with her gun on June 27, 2003.

Defendants have a rule requiring a progressive system of discipline.  The severity of offenses or whether an individual has been disciplined in the past will generally affect the level of discipline.  See Ex. A to Galvin Aff., 5:06-CV-949, Dkt. No. 35-25.  The disciplinary records of a number of  police officers have been submitted into evidence.  See, e.g., Exs. J, L, M, P, Q to Bosman Affirmation, 5:03-CV-1329, Dkt. Nos. 117-11, 117-13, 117-14, 117-17, 117-18, respectively; Exs. B, D, E to Bosman Affirmation, 5:06-CV-949, Dkt. No. 41-2.  Plaintiff had a disciplinary record before going on medical leave.

In October 2000, plaintiff was disciplined for transmitting personal text messages on police department equipment while on-duty during July through October of that year, including an incident involving officer Peggy Southwell.  Plaintiff was penalized ten furlough days and later filed a grievance challenging the SPD's punishment.  The penalty was thereafter reduced to a loss of two furlough days, and plaintiff agreed to not pursue legal action for that discipline.  On August 22, 200, plaintiff was disciplined for making intimidating remarks about an officer.

On June 27, 2003, plaintiff was disciplined for allegedly harassing and threatening defendant Kaufman.  Plaintiff lost three furlough days because of this conduct.  On the same day, plaintiff was disciplined for insubordination after allegedly failing to obey an order from a sergeant to discontinue making excessive phone calls while on duty.  As a result, plaintiff was suspended for ten days without pay.

In 2003, at a retirement party for a police officer, defendant Kerwin remarked to other police officers that the president of the Union, Jeff Piedmonte, could not be there

- 10 -

because he was trying to persuade Paul Hanley, another Syracuse police officer, not to drive to plaintiff's house.  Plaintiff heard about this comment from officer Timothy Gay.  Plaintiff alleges that defendant Kerwin insinuated she was having an affair with Paul Hanley.  Plaintiff reported the comments to the SPD EEOC officer.  Defendants allege they investigated this comment.  After interviewing defendant Kerwin, defendant Thompson determined defendant Kerwin did not state that plaintiff and Paul Hanley were having an affair.  No discipline was imposed.

On May 30, 2004, plaintiff was injured in an on-duty car accident.  In December 2004, plaintiff was told that she could no longer go to chiropractor appointments while working overtime.  On July 26, 2005, plaintiff was told she could no longer go to physical therapy appointments during work.  Plaintiff was also told that she could not use a SPD vehicle to attend medical appointments.

On October 7, 2005, plaintiff and defendant Douglas were involved in an incident at Nottingham High School.  Plaintiff and defendant Douglas are the same rank.  When plaintiff and defendant Douglas arrived, a male student was in handcuffs waiting to be taken to the Onondaga County Justice Center.  Defendant Douglas claims that he put the student in the car and waited for plaintiff so she could follow him to the Justice Center.  Plaintiff states that defendant Douglas ignored her the entire time and left without her.  Defendant Douglas states that plaintiff did not follow him or assist with booking.  Plaintiff claims she tried to follow defendant Douglas.  For that incident, plaintiff was disciplined on January 5, 2006, directly before or after roll call in the presence of other officers, for not communicating with a fellow officer.

Plaintiff complained about defendant Douglas's failure to follow protocol in the Nottingham High incident and for derogatory comments he made about her to other officers. Defendant Douglas allegedly stated that plaintiff is "useless," "needs to retire," she has sex with everyone in the department, and she is a "psychotic cunt."  Defendant Douglas admitted that he stated plaintiff was useless.  None of these comments were said directly to plaintiff. No action was taken against defendant Douglas for these comments after the investigator determined that the complaint was unsubstantiated.  No discipline was imposed on defendant Douglas for the incident at Nottingham High School.

In December 2005, defendant Galvin asserts that he heard rumors that plaintiff had exposed herself at a SPD Christmas party.  Defendant Galvin made inquiries regarding this rumor.  Plaintiff received a memorandum asking whether she had exposed herself.  Plaintiff denied that this had occurred.  Defendant Galvin never found anyone who said that Plaintiff exposed herself.  No disciplinary action was taken.

On January 22, 2006, plaintiff found a memorandum written by defendant Douglas dated November 16, 2005.  This memorandum was posted by someone on a bulletin board. Plaintiff removed the memorandum from the bulletin board.  The memorandum was regarding the investigation of the Nottingham High School incident.  In the memorandum, defendant Douglas claimed that Sergeant Long was not credible because he wanted to have a personal relationship with plaintiff.  Defendant Douglas was suspended for five days without pay for writing the memorandum.

On March 20, 2006, plaintiff filed her second EEOC complaint.  On or about June 16, 2006, plaintiff's attorney, Ms. A.J. Bosman, mailed a letter to Robert Stamey, Assistant Corporation Counsel for the City of Syracuse.  In that letter, Ms. Bosman demanded

documents from April 15 and April 16, 2006 relating to an incident with defendant Kaufman. On June 26, defendant Kaufman filed a complaint with Internal Affairs alleging that plaintiff made slanderous statements about him, including that he was involved in illegal gambling and had retained injuries while fighting with one of his children, and that Sergeant Long had illegally investigated him.  On June 30, 2006, defendant Galvin sent a memorandum to plaintiff asking her to respond to questions regarding defendant Kaufman's complaint. Plaintiff admits she told someone that defendant Kaufman beats his children.

Also on June 30, 2006, Ms. Bosman, sent another letter to Robert Stamey of the Syracuse Corporation Counsel.  In that letter, Ms. Bosman threatened to seek sanctions and court intervention because plaintiff had received the memorandum inquiring about whether she had made statements relating to defendant Kaufman.  Ms. Bosman claimed that the memorandum was sent in retaliation for the lawful discovery request.  Defendant Galvin states that he had not received or heard about the discovery request when he sent the memorandum to plaintiff.  Plaintiff alleges that no inquiry would have been made unless she had made the discovery request.

Sergeant Long stated in his deposition that in July 2006, defendant Heenan told him "grow a set of balls" and "write [plaintiff] up when she talks about people."  Long. Dep. 41:23-25, 42:1-7 (Aug. 1, 2006), 5:06-CV-949, Dkt. No. 40.  Defendant Heenan states that any comments he made were a critique of Sergeant Long's supervision of officers.  In September 2006, Sergeant Long was disciplined for conducting an illegal investigation of defendant Kaufman.  Sergeant Long was not transferred from his position and remains a sergeant assigned to the Patrol Division of the Second Platoon.  Sergeant Long has not been

disciplined since that investigation.  Plaintiff will also lose five furlough days for spreading

rumors about defendant Kaufman after she returns from medical leave.

In August 2006, plaintiff requested a transfer to a position in the city schools.

Plaintiff later rescinded this request.  According to defendant Kerwin, he asked plaintiff if she

rescinded the request because she thought he would transfer her to nights during the

summer.  In response, plaintiff alleges that defendant Kerwin positioned himself close to her,

raised his voice, and asked her if she rescinded the transfer because he would "fuck" with

her.  Plaintiff denied that this was the reason and submitted a memorandum stating her

denial at the request of defendant Kaufman.  Defendant Kerwin ordered plaintiff to re-write

and file the memorandum again.  Sergeant John Kavanagh was present at this exchange

and was also ordered to submit a memorandum detailing the conversation.

Plaintiff alleges that she has been subject to derogatory comments about her

mental acuity, including being called an "EDP" or emotionally disturbed person.  At least one

ranking officer, defendant Kerwin, has admitted that he thinks that plaintiff is not fit to be a

police officer.  Plaintiff also states that she has been subject to derogatory gender based

comments, including writing in the bathroom and the incidents involving defendant Kerwin

and defendant Douglas discussed supra.  In addition to the comments that have been

communicated personally to her, plaintiff states that she has also heard male officers refer to

women officers as "dikes", "lesbians", and "sluts."  Plaintiff admits that she has made

derogatory comments about other police officers, and Sergeant Long alleges that plaintiff has

made such comments.  Members of the police department have also witnessed their

colleagues viewing pornography at the workplace, but plaintiff neither personally witnessed

the pornography nor submitted a complaint regarding the display of such material.

On September 1, 2006, plaintiff was placed on medical leave for neck and back injuries she suffered in the on-duty car accident that occurred on May 30, 2004.  Plaintiff did not file a notice of claim for either Suit I or Suit II.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56;  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56;  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met their burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56;  Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511;  Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the non-movant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510;  Matsushita Elec. Indus. Co., 475

U.S. at 587, 106 S. Ct. at 1356.  "[M]ere conclusory allegations, speculation or conjecture will

not avail a party resisting summary judgment."  Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d

Cir. 1996) (internal citation omitted).  Additionally, affidavits or portions of affidavits that are

not based on personal knowledge will not be entitled to any weight when considering a

motion for summary judgment.  Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d

155, 160 (2d Cir. 1999).

### B. Statement of Material Facts

Both plaintiff and defendants assert that one another violated Local Rule 7.1 (a)(3)

("LR 7.1").  Plaintiff asserts that defendants' statements of material facts should be struck

because the statement in Suit I is "onerous" and the statement in Suit II is "unduly lengthy"

and "engages in extended discussion of nonmaterial facts" that violates the "spirit" of LR 7.1.

See Bosman Affirmation ¶ 13, 5:03-CV-1329, Dkt. No. 117;  Pl.'s Resp. to Statement of

Material Facts, 1-2, 5:06-CV-949, Dkt. No. 45.  Plaintiff seeks to strike defendants'

statements of material facts for both suits.  Defendants argue that in both of her replies,

plaintiff failed to admit or deny the facts in many responses and also did not set forth specific

citations to the record.  See Defs.' Reply Mem. in Supp. of Summ. J., 1-3, 5:03-CV-1329,

Dkt. No. 128-11; Defs.' Reply Mem. in Supp. of Summ. J., 1-3, 5:06-CV-949, Dkt. No. 48-9;

Def. Douglas's Reply Mem. in Supp. of Summ. J., 1-3, 5:06-CV-949, Dkt. No. 46.  All

defendants seek to have those responses deemed admissions.

The Local Rules are not "empty formalities".  Meaney v. CHS Acquisition Corp., 103

F. Supp. 2d 104, 108 (N.D.N.Y. 2000).  The rules "notify the parties of the factual support for

their opponent's arguments" and "inform the court of the evidence and arguments in an

organized way."  Id.  Although rules are not applied so strictly as to "undermine the interests

of justice . . . there is a point when forbearance of a party's noncompliance with the Rules unfairly prejudices its adversaries." Id. at 109 (internal citation omitted).

With regard to plaintiff's request to strike defendants' statements of material facts, LR 7.1 does not impose a length restriction.  Accordingly, defendants' statements of material facts do not violate LR 7.1.  Even more importantly, given plaintiff's numerous causes of action, the length of defendants' statements of facts are not unreasonable.  Plaintiff's request to strike will therefore be denied.

With regard to defendants' first argument, LR 7.1 states that a non-movant must respond "by admitting and/or denying each of the movant's assertions."  Here, in response to a number of factual assertions, plaintiff disputes that the facts are relevant.  See Pl.'s Resp. to Statement of Material Facts, ¶¶ 94-96, 5:03-CV-1329, Dkt. No. 125; Pl.'s Resp. to Statement of Material Facts, ¶¶ 2, 6, 11, 28, 80, 87, 88, 91, 100-104, 110, 111, 119, 120, 123, 5:06-CV-949, Dkt. No. 45; Pl.'s Resp. to Def. Douglas's Statement of Material Facts, ¶¶ 7-11, 15, 26-28, 5:06-CV-949, Dkt. No. 45.  Plaintiff also disputes the admissibility of a number of statements on the ground that those statements are hearsay.  See Pl.'s Resp. to Statement of Material Facts, ¶¶ 30, 33, 34, 41, 43, 49-52, 55, 56, 59, 60, 65, 68, 69, 71, 72, 75-81, 88, 89, 5:03-CV-1329, Dkt. No. 125; Pl.'s Resp. to Statement of Material Facts, ¶¶ 41, 43, 70, 98, 124, 125, 127, 5:06-CV-949, Dkt. No. 45; Pl.'s Resp. to Def. Douglas's Statement of Material Facts, ¶ 22, Dkt. No. 45.  The non-moving party may object to the admissibility of statements.  See Major League Baseball Props, Inc. v. Salvino, Inc., 542 F.3d 290, 312-15 (2d Cir. 2008) (applying S.D.N.Y. Local Rule 56.1).[4]  However, if the facts are admissible and

---

[4] The standard for a response to a statement of material facts under Southern

(continued...)

supported by the record, an objection is not sufficient to deny the fact.  Id. at 314 ("An

objection to the admissibility of a document is not the equivalent of a contention that the

document's contents are untrue.").  Therefore, where plaintiff objects only to admissibility and

provides no indication that the fact is untrue, that fact will be deemed admitted by plaintiff if it

is admissible under the Federal Rules of Evidence.

        As for defendants' second argument, LR 7.1 requires that "[e]ach denial shall set

forth a specific citation to the record where the factual issue arises."  LR 7.1.  In a motion for

summary judgment, if a non-movant's statement fails to include citations to the record, a

District Court could deem those facts to be admitted.  See Meaney, 103 F. Supp. 2d at 108.

Second Circuit cases addressing the insufficiency of a non-movant's responses primarily

address situations where the non-movant failed to submit any response or did not provide

any cites to the record in the responses.  See, e.g., N.Y. State Teamsters v. Express Servs.,

Inc., 426 F.3d 640, 648-49 (2d Cir. 2005); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir.

1998).

        Here, plaintiff does not completely fail to submit responses and, for the most part,

cites the record.  However, in a number of plaintiff's responses to individual paragraphs,

there are no citations to the record.  See, e.g. Pl.'s Resp. to Statement of Material Facts, ¶¶

9,12, 53, 5:03-CV-1329, Dkt. No. 125.  Additionally, in other responses, plaintiff fails to

---

[4](...continued)
District of New York Local Rule 56.1 is analogous to N.D.N.Y. LR 7.1.  See S.D.N.Y. Local
Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the
statement required to be served by the moving party will be deemed to be admitted for
purposes of the motion unless specifically controverted by a correspondingly numbered
paragraph in the statement required to be served by the opposing party.") (emphasis
omitted).

provide page numbers or exhibits where factual information may be found.  See, e.g, Pl.'s

Resp. to Statement of Material Facts, ¶¶ 17, 23, 29, 30, 40, 5:03-CV-1329, Dkt. No. 125;

Pl.'s Resp. to Statement of Material Facts, ¶¶ 63, 65, 95, 96, 105, 5:06-CV-949, Dkt. No. 45.

Although these responses are not as deficient as not responding at all, they do not meet the

requirements of LR 7.1.

Nevertheless, a "district court has broad discretion to determine whether to overlook

a party's failure to comply with local court rules."  Holtz v. Rockefeller & Co., Inc., 258 F.3d

62, 73 (2d Cir. 2001).  Even if a non-movant fails to follow the local rules, summary judgment

may not be granted if the movant has not met its burden under the Federal Rules of Civil

Procedure.  Id.  Therefore, in the interest of justice, where the facts that plaintiff is attempting

to reference can be ascertained by reviewing the record, the lack of a citation or an

insufficient citation will not be taken construed as an admission.  However, where plaintiff

attempts to dispute material facts through conclusory assertions without factual support in

the record, those assertions will not be sufficient for a motion for summary judgment.

### C. City of Syracuse Police Department (Suits I and II)

A police department "does not have its own legal identity;" rather, it is an

administrative arm of a city.  Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999)

(internal citation omitted).  Here, plaintiff brought claims against both the City of Syracuse

and the SPD.  Because these are not separate legal entities, all claims against defendant

SPD will be granted summary judgment to the extent that both the SPD and City of Syracuse

are named as defendants in the same causes of action.

### D. **Title VII (Suit II)**

All of plaintiff's Title VII claims of discrimination, retaliation, and hostile work environment addressed here arise out of Suit II.  Plaintiff asserted Title VII claims for discrimination and retaliation in Suit I.  As previously noted, those claims were dismissed and will not be discussed here.  See Lee, No. 5:03-CV-1329, slip op. at 6-9, Dkt. No. 33. Defendants' alleged discriminatory conduct falling within the relevant time period for Suit II includes the assignment of overtime, disciplinary decisions, and the prohibition on the use of work time to attend medical appointments for work-related injuries.  Plaintiff's retaliation claims for Suit II arise from defendants' investigations and disciplinary decisions. Defendants' conduct relevant to plaintiff's hostile work environment claim include: defendant Douglas's verbal comments and memorandum, the comments made by defendant Kerwin at a retirement party, writing in the bathroom, the presence of pornography at work, and the general use of derogatory names for women by members of the police force.

#### 1. **Individual Liability**

Under Title VII, "individuals are not subject to liability."  Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (internal cites omitted).  Because defendants are not subject to individual liability under Title VII, defendants' motion for summary judgment will be granted for all individual defendants sued in their individual capacity under Title VII.

#### 2. **Gender Discrimination (First Cause of Action in Suit II)**

Title VII discrimination claims are analyzed based on the McDonnell Douglas burden-shifting test.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973).  First, a plaintiff must establish a *prima facie* case of discrimination by

showing: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824). If a plaintiff establishes a *prima facie* case, then the defendant must demonstrate that it had a legitimate and non-discriminatory reason for its actions. McDonnell Douglas, 411 at 802, 93 S. Ct. at 1824. If the defendant meets its burden, the plaintiff must then show that the defendant's explanation is merely pretext for unlawful discrimination. Id. at 804, 93 S. Ct. at 1825. At this point, the plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir.1994)).

For Title VII discrimination claims, instances of unlawful conduct are considered discrete acts. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 104-05, 122 S. Ct. 2061, 2068 (2002). Discrete acts that occurred more than 300 days prior to the EEOC complaint will not be considered. Id. For Suit II, plaintiff filed an EEOC complaint on March 20, 2006. Therefore, discrete acts prior to May 24, 2005 will not be considered.

Here, plaintiff's claims for disparate treatment in the relevant time period relate to the assignment of overtime, disciplinary actions, and the prohibition against using work time to attend medical appointments for work-related injuries. Although defendants admit plaintiff is a member of a protected class, they do not concede any of the stages of the McDonnell Douglas burden-shifting analysis: First, defendants argue that plaintiff has not established a

*prima facie* case of discrimination; second, they contend there were legitimate non-discriminatory reasons for their actions; and third, they claim that plaintiff has not established that their actions were mere pretext.

### a. Overtime Assignment

With regards to the assignment of overtime, plaintiff has not established her *prima facie* case because she has not shown an adverse employment action.  An adverse employment action creates "a materially adverse change in the terms and conditions of employment."  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal citation omitted).  Here, although allocation of overtime could qualify as an adverse action because of the loss of an opportunity for a higher salary, plaintiff offers no evidence, including her own affidavit, that she personally was denied overtime assignments.  In Suit II, plaintiff does not cite instances where she sought overtime work and that work was denied after May 24, 2005.[5]  Plaintiff has submitted the report of her expert, Dr. Charles N. Kroll, as evidence that disparate assignment of overtime for women may occur.  See Ex. G to Bosman Affirmation, 5:06-CV-949, Dkt. No. 41-3.  However, even if that report is admissible, it is not sufficient to establish a *prima facie* case unless plaintiff submits some evidence that she personally was denied overtime.  Because plaintiff has not submitted evidence that she has been denied overtime in the relevant time period, she has not establish a *prima facie* case of discrimination and accordingly, defendants will be granted summary judgment.

_____

[5] Plaintiff does assert that she was denied the opportunity for overtime when she was on medical leave after the November 2000 altercation.  That time period is not relevant to her Title VII claim because it falls outside of the relevant 300 day time period.

### b. Use of Work-Time to Attend Appointments

Plaintiff asserts that male officers at the SPD are allowed to go to medical appointments while on-duty and she has been discriminated against because she is no longer allowed to go to medical appointments while working.  She also states that she was discriminated against because she could not use a SPD car to attend these appointments.  A showing of disparate treatment can raise a sufficient inference of discrimination for a *prima facie* case.  See Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003).  In this case, however, plaintiff has not submitted admissible evidence that others at the police department are allowed to go to medical appointments while working.  To the contrary, defendants have presented evidence of a lack of disparate treatment. They have shown that the SPD has a policy regarding the scheduling of medical appointments outside of work hours and a policy that limits the use of department vehicles.  See Cuelton Reply Aff. ¶¶ 4-8, 5:06-CV-949, Dkt. No. 48-5.  Defendants have shown that sergeant John Douglas, a white, male officer, was not allowed to use work time to attend medical appointments, just like plaintiff.  Id. at ¶ 4. Defendants have also submitted a decision from a grievance that both Sergeant Douglas and plaintiff brought regarding this policy where they were denied relief.  See Ex. A to Cuelton Reply Aff., 5:06-CV-949, Dkt. No. 48-6.  Because plaintiff has not shown disparate treatment, she has not establish her *prima facie* case.

### c. Discipline for Violation of SPD Rules

Defendants raise a number of arguments for why plaintiff has not established a *prima facie* case of discriminatory discipline, including that her job performance was unsatisfactory, that the SPD's actions did not rise to the level of materially adverse

employment actions, that she was disciplined for violating SPD rules instead of because of her gender, and that she has failed to present evidence of disparate treatment.

First, defendants argue that plaintiff has not performed her job in a satisfactory manner. They do not, however, establish that she was unqualified to be a police officer. In a situation where discipline may have been issued in a discriminatory manner, showing that plaintiff violated department rules is not sufficient, especially where such violations are commonly overlooked. Here, the core question is whether she was treated differently because of her gender for these violations. Therefore, although plaintiff's job performance is relevant to show defendant's legitimate, non-discriminatory reasons for their actions, this argument is not persuasive at the *prima facie* stage.

Second, defendants correctly assert that not all of their actions qualify as adverse employment actions. In order to qualify as an adverse employment action for a Title VII discrimination claim, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya, 202 F.3d at 640 (internal quotation omitted). To qualify as adverse, "there must be a link between the discrimination and some tangible job benefits such as compensation, terms, conditions or privileges of employment." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal citation omitted). Here, having to submit inter-departmental memorandums in response to either orders from superior officers or instances of misconduct does not constitute an adverse employment action because it does not alter the conditions of plaintiff's employment. However, disciplining plaintiff for the incident at Nottingham High School and for spreading rumors affect tangible job benefits because plaintiff lost a number of furlough days. Therefore, the penalties imposed from the

discipline are sufficient to satisfy plaintiff's burden to show an adverse action during the *prima facie* stage.

Defendants also argue that plaintiff has not shown that the discipline she received was because of her gender or that she was treated differently than similarly situated male colleagues.  These arguments are equally unavailing.  First, plaintiff has only a minimal burden when establishing a *prima facie* case of gender discrimination. <u>Mandell</u>, 316 F.3d at 378 (internal citation omitted).  Second, plaintiff has shown disparate treatment because defendant Douglas was not disciplined for his conduct in relation to the Nottingham High School incident and that others in the department have not been subjected to discipline for "spreading rumors."  In addition to this, plaintiff has submitted evidence that the severity of punishment can vary greatly.  <u>See</u> Exs. B, D, E to Bosman Affirmation, 5:06-CV-949, Dkt. No. 41-2.  This is sufficient to show an inference of discrimination for a *prima facie* case.  Because plaintiff has established her *prima facie* case for the discipline she received, the burden shifts to defendants.

At the second stage of the <u>McDonnell Douglas</u> burden-shifting analysis, the defendant must show a legitimate, non-discriminatory reason for an adverse employment action.  <u>Tex. Dep't of Cmty. Affairs</u>, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 (1981).  Defendants present evidence that plaintiff violated SPD rules at Nottingham High School when she did not follow defendant Douglas and when she told others that defendant Kaufman abused his children.  They have presented evidence of the department rule governing discipline that applies to all members of the police department, regardless of gender.  <u>See</u> Ex. A to Galvin, 5:06-CV-949, Dkt. No. 35-25.  Defendants have also submitted

evidence explaining why discipline may vary based on the number of past infractions and the severity of the conduct.  See Galvin Reply Aff.  ¶¶ 4-8, 5:06-CV-949, Dkt. No. 48-8. Because they have set forth legitimate, non-discriminatory reasons for imposing discipline and the level of discipline imposed, the burden shifts back to plaintiff.  McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. at 1825.

When the burden has shifted back to plaintiff, she must show by a preponderance of the evidence that defendants' proffered reasons are nothing more than pretext for unlawful discrimination.  Id. at 802, 93 S. Ct. at 1824.  Plaintiff's burden at the third stage of the McDonnell Douglas analysis is substantially higher than the burden at the first stage.  Meiri v. Dacon, 759 F.2d 989, 996-98 (2d Cir. 1985).  Pretext can be established "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs, 450 U.S. at 256, 101 S. Ct. at 1095.

Plaintiff has not presented evidence to establish pretext indirectly.  In particular, defendants' explanation for the discipline is not "unworthy of credence" because plaintiff violated SPD rules before receiving discipline.  Therefore, in order to survive summary judgment, plaintiff must show that discriminatory reasons more likely motivated the employer than the proffered reasons.  However, by her own admissions, defendants were motivated by retaliation.  For example, she states in her affidavit that "[e]ach time I have complained about a discriminatory or retaliatory act, the Department initiates an investigation into my conduct and finds a way to accuse me of wrongdoing."  Pl.'s Aff. in Opp'n to Summ. J., ¶ 46,  5:06-CV-949, Dkt. No. 39.  Additionally, in her deposition taken on December 20, 2006, plaintiff stated that "my lawsuit wasn't sexual harassment . . . and the city was just looking for

reasons to discipline me . . . to retaliate or get back at me . . . . " Pl.'s Dep. 211:22-25 (Dec. 20, 2006), 5:06-CV-949, Dkt. No. 41-8.  Although supportive of her claim for retaliation discussed infra, these statements do not show that defendants were more likely motivated by plaintiff's gender for purposes of her discrimination claim.  Admittedly, there may be more than one motive for any adverse action, but plaintiff still must show that the adverse action was more likely the result of gender discrimination.  The limited admissible evidence plaintiff has submitted is insufficient to satisfy her burden, particularly as she all but concedes that defendants were motivated by retaliation instead of gender discrimination.  As plaintiff has not established pretext, her Title VII claims for gender discrimination in discipline will not survive summary judgment and this cause of action will be dismissed.

### 3. Retaliation (Third Cause of Action in Suit II)

        For a Title VII retaliation claim, a plaintiff must show (1) that she was engaged in a protected activity; (2) that the employer was aware of that activity; (3) that plaintiff was thereafter subjected to an adverse employment decision; and (4) that there was a causal connection between plaintiff's protected activity and the adverse action. Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (internal quotation omitted).  Plaintiff's retaliation claim under Title VII is subject to the same burden shifting analysis established in McDonnell Douglas. Amin v. Akzo Nobel Chemicals, Inc., 282 F. App'x 958, 961 (2d Cir. 2008).  Retaliation claims are also subject to a 300-day time bar.  See Morgan, 536 U.S. at 113, 117, 122 S. Ct. at 2072, 2074.  Therefore, no alleged acts of retaliation from before May 24, 2005 will be addressed.  Falling within the relevant time period is the investigation of plaintiff after the October 7, 2005 incident involving defendant Douglas, the investigation of

- 27 -

whether plaintiff had exposed herself at a SPD Christmas party, and the investigations of plaintiff and Sergeant Long.

Defendants argue that plaintiff can not establish the third and fourth prongs of her *prima facie* case.  First, they assert none of the alleged conduct by defendants, except for the discipline after the Nottingham High incident, qualifies as an adverse action because none of the conduct affected the terms and conditions of plaintiff's employment.  This argument fails because it applies the wrong legal standard for "adverse action" for retaliation claims as recognized by the Supreme Court.[6]  Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 66, 126 S. Ct. 2405, 2414 (2006).  In Burlington Northern, the Supreme Court found that "adverse action" for a Title VII retaliation claim is a different and broader standard than for a Title VII discrimination claim.  Id.  The Court stated that an "adverse action" is any action "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 68, 126 S. Ct. at 2415 (internal quotations and citations omitted).  An action will be considered material if it is "'likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."  Id. (internal quotation omitted).  Here, plaintiff was investigated for exposing herself and for other violations of SPD rules.  Being investigated by one's employer could deter a reasonable person from complaining about discrimination because investigations can

_____

[6] Defendants in their reply memorandum of law state the correct standard but only address one investigation outside of the relevant time period.  See Defs. Reply Mem. in Supp. of Summ. J., 9, 5:06-CV-949, Dkt. No. 48-9.

be intrusive and intimidating.  Because being investigated by one's employer could likely deter a victim from complaining about discrimination, this qualifies as an adverse action.

Next, defendants point to plaintiff's filing of a second EEOC complaint and the time between the first EEOC complaint and any adverse actions as evidence that plaintiff was not dissuaded from complaining about discrimination.  This argument fails because the adverse actions may have deterred a reasonable employee from reporting discrimination to her *employer*.  Under <u>Burlington Northern</u>, it is not only conduct that will deter someone from reporting to the EEOC but also conduct that will deter a person from reporting discrimination to their employers. 548 U.S. at 66, 126 S. Ct. at 2415  (internal citation omitted) (Courts consider whether the action is "likely to deter victims of discrimination from complaining to the EEOC,' the courts, and their *employers*.") (emphasis added).  Here, all investigations were done in close temporal proximity to complaints that plaintiff made to her employer.  Because the adverse actions can be connected to complaints made to one's employer as well as the EEOC and plaintiff has shown that adverse actions were taken shortly after complaints to her employer, defendants' argument regarding the causal connection fails.   By showing a causal connection, plaintiff has established all of the elements of her *prima facie* case and the burden shifts to defendants.

As discussed, the investigations and discipline directed at plaintiff were the result of alleged violations of SPD rules.  Such violations constitute legitimate, non-discriminatory reasons to conduct investigations and administer discipline.  Accordingly, the burden shifts back to plaintiff to establish that such reasons were merely pretext for unlawful discrimination.

To establish pretext, plaintiff must show that discriminatory reasons more likely motivated the employer than the proffered reasons.  Here, since some form of investigation followed plaintiff's complaints to her employer or her attorney's request for documents and plaintiff has submitted admissible evidence that her supervisor was told to write her up every time she spoke about someone and that others similarly situated were not disciplined or investigated in the same manner, plaintiff has shown that it is more likely than not that these investigations occurred because of her complaints about discrimination.  Because pretext can be established here, defendant's motion for summary judgment for the Title VII retaliation cause of action will be denied.

### 4. Hostile Work Environment (Second Cause of Action in Suit II)

For a hostile work environment claim, a plaintiff must "elicit evidence from which a reasonable trier of fact could conclude (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (internal citation omitted).  For this type of claim, "the entire time period . . . may be considered" as long as one act occurred within the statutory period.  Morgan, 536 U.S. at 117, 122 S. Ct. at 2061.[7]

Generally, "hostile work environment claims present mixed questions of law and fact that are especially well-suited for jury determination."  Schiano v. Quality Payroll Sys,

---

[7] Defendants argue that no conduct from 2000-2003 should be considered for plaintiff's Title VII claims in Suit II because her Title VII claims were dismissed in Suit I.  See Defs.' Reply Mem. Supp. Summ. J., 5-7, 5:06-CV-949, Dkt. No. 48-9.  However, plaintiff did not bring a Title VII hostile work environment claim in Suit I.

Inc., 445 F.3d 597, 605 (2d Cir. 2007) (internal citation omitted).  Specifically, when

considering a hostile work environment claim, the fact that an employee was not present

when derogatory comments were made does not make those comments irrelevant because

the quantity, frequency, and severity of those comments help demonstrate a realistic view of

work environment.  Schwapp v. Town of Avon, 118 F.3d 106, 110-11 (2d Cir. 1997).

Additionally, the Second Circuit has recognized that the mere presence of pornography in a

workplace can alter the "status" of women and is relevant to assessing the objective hostility

of the environment.  Wolak v. Spucci, 217 F.3d 157, 160-61 (2d Cir. 2000).

       However, the Supreme Court has explained that the standard is not a

"mathematically precise test,"  and  "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether

it unreasonably interferes with an employee's work performance" must be considered.  Harris

v. Forklift Sys., Inc., 510 U.S. 17, 22-23, 114 S. Ct. 367, 371 (1993).  Specifically, isolated

incidents are generally not sufficient unless the conduct is particularly severe.  Demoret v.

Zegarelli, 451 F.3d 140, 149 (2d Cir. 2001).  When addressing pervasiveness, the continuity

of the conduct is considered.  Id.  If a plaintiff produces evidence of sufficiently severe

conduct that created a hostile work environment, the plaintiff must also establish that "a

specific basis exists for imputing the conduct that created the hostile environment to the

employer."  Mack, 326 F.3d at 122 (internal citation omitted).

       The conduct relevant to plaintiff's Title VII hostile work environment claim presented

in Suit II includes: defendant Douglas's verbal comments and memorandum after the

Nottingham incident, the comments made by defendant Kerwin at the retirement party, the

writing in the bathroom, the presence of pornography at work, and the general use of derogatory names against women by members of the police force.

Defendants argue that this conduct is not sufficient to establish a hostile work environment claim because the incidents were sporadic and not pervasive, any offensive comments were not made directly to plaintiff but conveyed to her third-hand, plaintiff herself made derogatory comments, plaintiff neither witnessed pornography first-hand nor complained that pornography was on display, and supervisors were generally not involved in the conduct.

The incidents involving defendant Douglas and defendant Kerwin appear to be isolated incidents.  As isolated incidents, they are not pervasive and must be considered in light of their severity.  See Demoret, 451 F.3d at 149 (citing Patterson, 375 F.3d at 227). First, defendant Kerwin's comments were not made directly to plaintiff and were made outside of work.  Although it is still relevant to a claim of a hostile work environment, the context does affect the severity.  Here, defendant Kerwin's off-duty comment, although unprofessional and later repeated to plaintiff, does not appear to have altered plaintiff's work environment.

As for defendant Douglas, the alleged derogatory comments and the memorandum was much more egregious.  Nevertheless, defendant Douglas is not plaintiff's supervisor, he was investigated for the comments, and he was penalized five furlough days for the memorandum.  Therefore, even if this conduct rose to the level of severity required for a hostile work environment claim, plaintiff has not established that her employer either expressly or passively ratified such behavior, and therefore, this conduct can not be attributed to the SPD.  Finally, regarding specific conduct relating to plaintiff, there are the

derogatory comments written on the bathroom wall.  Plaintiff has only submitted evidence of this happening once, so it can not be deemed pervasive and the severity must be considered.  Although this writing was highly inappropriate in a work place, plaintiff has not shown any evidence that the comments altered her working conditions.  Additionally, defendants have shown that the writing was promptly removed after they were notified of its content.  Therefore, these comments do not give rise to a hostile work environment claim.

Although all of these incidents alone are not sufficiently severe to establish a hostile work environment claim, they must also be considered with other, ongoing conduct that could be deemed pervasive and cumulatively give rise to a hostile work environment claim.  The ongoing conduct at issue here is the presence of pornography at work and the general assertion that plaintiff heard women called derogatory names.  Although the presence of pornography is considered as part of a hostile work environment claim, plaintiff never personally observed pornography and did not report the presence of such material.  Plaintiff admitted in her own deposition, ". . . I didn't see it so I had no complaint to make about it."  Pl.'s Dep. 330:1-3 (Oct. 19, 2007), 5:06-CV-949, Dkt. No. 35-18.  Since plaintiff admits that she had "no complaint" about it, the pornography did not severely alter her working conditions for the purposes of her hostile work environment claim.  As for the use of derogatory terms to refer to women, plaintiff's assertion is quite vague.  It does not include the names of anyone specifically who uses these terms, nor does it include the frequency that these terms were used.  Again, plaintiff does not submit any evidence that she reported the use of these terms generally outside the complaints she made about defendants Kerwin and Douglas already discussed supra.  Additionally, plaintiff herself does not deny that she sometimes used derogatory language when referring to other people at work.  This weighs

against her claim that the use of these terms altered her work environment because she was involved in similar conduct.  Because of the vague nature of these claims, the fact that they were not reported to her supervisors, and plaintiff herself used similar derogatory terms, plaintiff has not shown pervasive conduct to support her claim of a hostile work environment.

Even when all of the conduct is considered together, plaintiff has not shown that the conduct was either sufficiently severe or pervasive.  Further, much of the conduct does not involve supervisors and therefore can not be attributed to her employer under Title VII. Because plaintiff has not shown that the complained of conduct was either sufficiently severe or pervasive to alter her working conditions and most of the conduct can not be attributed to plaintiff's supervisors, defendants' motion for summary judgment will be granted for plaintiff's Title VII hostile work environment cause of action.

### E. Americans with Disabilities Act (Fourth Cause of Action in Suit I)

#### 1. Individual Liability

There is no individual liability under the Americans with Disabilities Act ("ADA"). Briggs v. New York State Dept. of Transp., 233 F. Supp. 2d 367, 373 (N.D.N.Y. 2002). Because defendants are not subject to individual liability under the ADA, defendants' motion for summary judgment will be granted for all individual defendants.

#### 2. Title I Claim

The McDonnell Douglas burden-shifting analysis applies to ADA employment discrimination claims.  See Reg'l Econ. Cmty. Action Program v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir. 2002).  ADA Title I claims are time-barred if a plaintiff does not "file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'"

Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133 (2d Cir. 2003) (citing 42 U.S.C. §

2000e-5(e)(1) (2000)).  Because plaintiff filed her first EEOC complaint on April 24, 2003, any

discrete acts occurring before June 28, 2002 may serve as the basis of her cause of action.

   Plaintiff was on light duty until September 2002.  At that time, plaintiff states that

she was threatened with discipline or termination if she did not release her medical records

from Dr. Lesswing.  Plaintiff was then placed on administrative leave until July 2003.  These

acts fall within the relevant time period.  The remainder of plaintiff's claims regarding conduct

that could qualify as disability discrimination fall outside the time allowed to recover for

discrete acts of discrimination, and accordingly are not cognizable.

   To establish her *prima facie* case, plaintiff must show that: "(1) [her] employer is

subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was

otherwise qualified to perform the essential functions of his job, with or without reasonable

accommodation; and (4) [she] suffered adverse employment action because of [her]

disability." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001).  Under this part of

the statute, a "disability" includes, "(A) a physical or mental impairment that substantially

limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C)

being regarded as having such an impairment." Id. (quoting 42 U.S.C. § 12102(2)).

   Plaintiff contends she was disabled as defined under the ADA because defendants

considered her mentally unstable despite her treating psychiatrist's determination that she

could return to full-duty.  According to plaintiff, defendants' erroneous belief that she

remained emotionally disturbed led to her working light-duty only.  She also contends that

defendants' put her on administrative leave when she would not release a portion of her

medical records.  In response, defendants argue that plaintiff has not established that she is

disabled within the meaning of the ADA because none of the evidence presented demonstrates they perceived her as incapable of working as a police officer.

With regard to whether plaintiff was perceived as disabled, plaintiff has submitted evidence that at least one police officer with supervisory authority admitted that he believed that plaintiff was "emotionally unfit for police work" and that some of her colleagues referred to her as an "EDP" or emotionally disturbed person. See Kerwin Dep. 51:9-10, 60:15-16 (Feb. 2, 2007), 5:03-CV-1329, Dkt. No. 117-34. Additionally, plaintiff has submitted internal office memoranda that supports her assertion that supervisors at the SPD regarded plaintiff as disabled. See Exs. 8, 15 to Pl.'s Aff. in Opp'n to Summ. J. 5:03-CV-1329, Dkt. Nos. 118-9, 118-16, respectively. With this evidence, plaintiff has met her initial burden as to whether she was regarded as disabled within the meaning of the ADA.

Defendant City of Syracuse also asserts that they should be granted summary judgment because plaintiff has not suffered an adverse employment action since she was paid while on leave. The Second Circuit has held that even actions that do not reduce wages can constitute adverse employment actions if the action resulted in "significantly diminished material responsibilities." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (internal citation omitted). Here, when placed on administrative leave, plaintiff did not have any responsibilities. Accordingly, plaintiff was entirely stripped of her responsibilities, and her placement on administrative leave thus qualifies as an adverse employment action even though she received her wages at that time. Additionally, because plaintiff was assigned to light duty, which had diminished responsibilities from her pre-administrative leave position, that assignment likewise qualifies as adverse employment action. Plaintiff has shown, for purposes of establishing a *prima facie* case, that she was subjected to an adverse

employment action.  Defendants do not contest the other *prima facie* elements. Therefore, plaintiff has established her *prima facie* case and the burden shifts to defendants to state a legitimate non-discriminatory reason for their conduct.

Defendants assert that the SPD had a business necessity for inquiries regarding plaintiff's mental health status.  Defendants state that the demands for her medical records and evaluation by different psychiatrists and psychologists were necessary to determine whether plaintiff could perform her job-related duties and specifically whether she could safely handle a gun.  Whether a police officer is able to perform her work-related functions, including whether she can handle a gun, is a legitimate and non-discriminatory reason for their conduct because of obvious safety concerns both internally at the police department and for the public at large.  Therefore, the burden shifts back to plaintiff to show that defendants' stated reasons are merely pretext.

Plaintiff first attempts to establish pretext by asserting that other officers, particularly male officers, have not been subject to examinations after being released from their treating doctor.  Plaintiff does not submit any admissible evidence to support this assertion, however. Defendants have provided affidavits stating that on other occasions the SPD physician has recommended that police officers not return to duty and that at least one other officer has been relieved of his department issued weapon as part of a recommendation by the police physician.  Again, plaintiff offers only conclusory statements that she was treated differently. See Pl.'s Resp. to Statement of Material Facts, ¶ 52, 5:03-CV-1329, Dkt. No. 125.  However, in addition to these assertions, plaintiff has shown that by September 2002 she had undergone a number of examinations and had released most of her records to the police department, including repeated releases from her treating psychiatrist.  Moreover, by that

time defendants already had the records of the psychologist Dr. Himmelsbach who had

examined plaintiff over a year earlier at the request of the police department and had

determined that plaintiff could work light duty and other restrictions should be re-evaluated.

In light of all of the medical information available to defendants by September 2002, plaintiff

has shown that a discriminatory reason more likely motivated the employer than the stated

business necessity for the records at that time.  Because plaintiff has shown that the demand

for Dr. Lesswing's testing records in September 2002 and her subsequent administrative

leave were more likely motivated by discrimination, defendants' motion for summary

judgment for plaintiff's Title I ADA cause of action will be denied.

### 3. Title II Claims

The Second Circuit has not yet addressed whether a claim for the denial of public

services pursuant to Title II of the ADA is cognizable for employment discrimination by a

public entity.  Federal District Courts in the Second Circuit have expressed different opinions

on this issue.  See e.g., Fleming v. State Univ. of N.Y., 502 F. Supp. 2d 324, 333  (E.D.N.Y.

2007) (holding that Title II does not apply to employment discrimination claims); Trans.

Workers Union of America, Local 100, AFL-CIO v. New York City Transit Authority, 342 F.

Supp. 2d 160, 173 (S.D.N.Y. 2004) (holding that Title II does apply to employment

discrimination claims).  Although having not yet explicitly addressed this issue,  However, the

Northern District has found that a "perceived disability" does not qualify as a disability under

Title II of the ADA.  Farid v. Bouey, 554 F. Supp. 2d 301, 326-327 (N.D.N.Y. 2008).  To be

able to withstand summary judgment under Title II, a plaintiff must show that she "suffers

from a physical or mental impairment which . . . substantially limits a major life activity."  Id. at

326 (citations omitted).  In this case, plaintiff bases her discrimination claim on perceived

disability and does not claim that she suffers from a physical or mental impairment.  As plaintiff's claims of discrimination based on perceived disability are not sufficient under Title II of the ADA, the City of Syracuse's motion for summary judgment on that cause of action will be granted.

### F. Section 1983 (Suits I and II)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988).  A plaintiff must also show "that the alleged deprivation was committed by a person acting under color of state law." Id.  A defendant's "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.'" United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941) (external citations omitted).  Both individuals and municipalities are subject to § 1983 claims. See, e.g., Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203; Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004).  However, qualified immunity may be granted to individuals.  See Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  Recently, in Pearson, the Supreme Court held that when addressing qualified immunity claims, district courts need not first determine whether facts alleged or shown by plaintiff make out violation of constitutional right and can consider first whether the right was "clearly established" at the time of defendant's alleged misconduct.  Id. at 818.

For plaintiff's § 1983 claims, the Equal Protection and conspiracy claims will be considered first.  Then, plaintiff's First Amendment claims against individuals will be

discussed.  Finally, plaintiff's First Amendment claim against the City of Syracuse will be analyzed.

### 1. Equal Protection Claims (Sixth Cause of Action in Suit I and Fourth and Fifth Causes of Action in Suit II)

The Fourteenth Amendment protects state employees from discrimination on the basis of sex.  Back, 365 F. 3d at 117.  The burden-shifting framework for Title VII claims applies to claims brought under § 1983.  Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) (internal citation omitted).  Where a plaintiff has made the same allegations of unlawful discrimination under Title VII, section 1983 does not give rise to a separate cause of action for unlawful discrimination.  Carrion v. Yeshiva Univ., 535 F.2d 722, 729 (2d Cir. 1976).  For the same reasons that plaintiff failed to establish her gender discrimination and hostile work environment Title VII claims, plaintiff's Equal Protection cause of action must also fail under § 1983.

### 2. Conspiracy (Tenth Cause of Action in Suit II)

Employees of a single corporate entity are legally incapable of conspiring together under the intracorporate conspiracy doctrine.  Herrmann v. Moore, 576 F.2d 453 (2d Cir. 1978).  This doctrine applies to public entities and their employees.  Nassau County Employee "L" v. County of Nassau, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004).  Here, plaintiff alleges a conspiracy among defendants.  However, at the time of the alleged conspiracy, all individual defendants were employees of defendant SPD.  Because employees of a single entity are legally incapable of conspiring under § 1983, defendants' motion for summary judgment will be granted for this cause of action.

### 3. First Amendment (Seventh Cause of Action in Suit I and Fourth and Ninth Causes of Action in Suit II)

Plaintiff asserts that defendants violated her First Amendment right to free speech by retaliating against her for lawful complaints of discrimination.  Defendants argue that individual defendants are entitled to qualified immunity and that defendant City of Syracuse should not be held liable because plaintiff has not shown that there was a custom or practice of retaliation against individuals who brought complaints of discrimination.  Defendants also assert that plaintiff's claim can not survive a motion for summary judgment because her discrimination complaints were not a matter of public concern, she was not subject to adverse employment actions, and plaintiff has not shown that her complaints were the substantial motivating factor for their conduct.

### a. Individual Defendants and Qualified Immunity

To determine whether a right is clearly established, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156 (2001). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987).

Defendants' conduct in investigating and disciplining plaintiff for alleged violations of department rules, even though sufficiently close in temporal proximity to establish pretext under Title VII, is insufficient to overcome qualified immunity under § 1983.  To establish qualified immunity, a defendant must show that a reasonable person in the position of the

defendant would not know that his conduct was violating plaintiff's constitutional rights.  See Saucier v. Katz, 533 U.S. at 202, 121 S.Ct. at 2156.  The defendants here could not have reasonably expected that their investigation or subsequent discipline of plaintiff either threatened or violated plaintiff's First Amendment rights because they were responding to allegations that plaintiff violated SPD rules.  Therefore, to the extent investigations were conducted and discipline imposed as a result of rules violations, defendants are entitled to qualified immunity.

However, where plaintiff can show that defendants sought to impose discipline absent a violation of department rules, a reasonable person would know that such conduct is unlawful when meant to silence a person.  In this case, plaintiff has presented evidence that defendant Heenan told her supervisor, Sergeant Long, to write up plaintiff every time she said anything about another person.  A reasonable officer would know that such conduct was unlawful because the officer was using discipline to intimidate a person rather than to address wrong doing.  Therefore, defendant Heenan's claim of qualified immunity will fail. For the other individual defendants, there is insufficient evidence to show that a reasonable person would expect their conduct to violate plaintiff's First Amendment rights, and they will be granted summary judgment for plaintiff's § 1983 First Amendment claim because they are entitled to qualified immunity.

For plaintiff's claim against defendant Heenan, the burden-shifting analysis for Title VII is used to determine if there is a viable claim. See Annis, 136 F.3d at 245.  In order to establish a *prima facie* case, a plaintiff must show that "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest;" (2) there was an adverse employment action; and "(3) the speech was at least a

substantial and motivating factor" in the adverse employment action.  Morrison v. Johnson,
429 F.3d 48, 51 (2d Cir. 2005).

      Plaintiff's complaints were primarily in regard to gender discrimination.  Gender
discrimination in public employment is a matter of public concern.  See Poulsen v. City of
North Tonawanda, 811 F. Supp. 884, 894 (W.D.N.Y. 1993).  Because gender discrimination
in public employment is a public concern, plaintiff has established the first prong of her *prima
facie* case.  As described supra, being investigated and disciplined could dissuade a
reasonable person from filing a complaint.  Therefore, plaintiff has established this *prima
facie* element.  Additionally, the temporal proximity of plaintiff's complaints to the adverse
actions as well as the comments made by defendant Heenan are sufficient to establish the
causal relationship.  Finally, even if defendant Heenan could show that he had non-
discriminatory reasons for his actions under the second stage of the McDonnell Douglas
analysis, his comments about plaintiff are sufficient to establish pretext because he stated
that he wanted plaintiff to be disciplined for merely talking rather than for legitimate reasons.
For these reasons, defendant Heenan's motion for summary judgment as to the fourth and
ninth causes of action in Suit II will be denied.

### b. Municipal Liability

      Under § 1983, "a municipality is not vicariously liable for the acts of its employees."
Coon v. Town of Springfield, 404 F.3d 683, 686-87 (2d Cir. 2005).  However, a municipality
may be liable for the conduct of its employees where a plaintiff establishes that her
constitutional rights were violated because of "a municipal custom or policy."  Russo v. City of
Bridgeport, 479 F.3d 196, 212 (2d Cir. 2007) (internal citations omitted).  For a claim based

on custom or policy, courts consider "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Canton, 489 U.S. at 385.  "A municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials . . . , [h]owever, a policy or custom may only be inferred if the acts or omissions of a municipality's supervisory officials are serious enough to amount to 'deliberate indifference' to the constitutional rights of a plaintiff." Poulsen, 811 F. Supp. at 896 (internal citation omitted).

Here, in order for defendant City of Syracuse to be liable, plaintiff must show that the SPD had a policy of retaliating against individuals who complain about discrimination. Plaintiff has presented evidence from a number of police officers that claim they have been retaliated against after complaining about discrimination and that supervisors were involved in this discrimination.  See Ex. J to Bosman Affirmation, 5:06-CV-949, Dkt. No. 41-4.  This evidence is sufficient to establish a question of material fact as to whether their was a policy or custom to retaliate against individuals who complained.  Therefore, defendant City of Syracuse's motion for summary judgment will also be denied regarding these causes of action.

### G. Equal Pay Act (Second Cause of Action Suit I and Sixth Cause of Action Suit II)

To establish a *prima facie* case of discrimination under the Equal Pay Act ("EPA")", a plaintiff must show: "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; [and] iii) the jobs are performed under similar working conditions." Belfi v. Prendergast, 191

F.3d 129, 135 (2d Cir. 1999) (internal citation omitted).  Claims of "sex discrimination regarding overtime assignments rather than unequal wage rates" do not constitute a violation of the EPA.  True v. N.Y. State Dept. of Corr. Servs., 613 F. Supp. 27, 31 (W.D.N.Y. 1984); see also Aguilar v. N.Y. Convention Ctr. Operating Corp., 174 F. Supp. 2d 49, 55 (S.D.N.Y. 2001).

The Union contracts with defendant City of Syracuse to set base rates and step increments for the SPD.  In that contract, women do not have lower wage rates than men. Additionally, defendants have offered evidence that plaintiff is paid at the same wage rate as male colleagues with similar rank and experience, and plaintiff has not submitted any evidence to show the wage rate varies for men and women.  As the wage rates are not different for men and women and plaintiff is not paid at a lower wage rate, the EPA is not violated.  Plaintiff contends that even though the wage rates are the same, varying overtime hours could violate the EPA.  Even if plaintiff could show that she was personally denied overtime hours because of her gender, which she has not, the disparate assignment of overtime hours does not constitute a violation of this act.  Therefore, defendants motion for summary judgment will be granted for the EPA claims in Suit I and Suit II.

### H. New York Human Rights Law (Fifth Cause of Action in Suit I and Seventh Cause of Action in Suit II)

Defendants state that the NYHRL claims should be barred against defendant City of Syracuse because plaintiff did not file a notice of claim.  They also argue that plaintiff has not provided sufficient evidence for these claims to survive a motion for summary judgment.

### 1. <u>Notice of Claim Requirement for NYHRL Claims</u>

General Municipal Law § 50-e does not permit a notice of claim requirement for NYHRL claims.  <u>See</u> <u>Gentile v. Town of Huntington</u>, 288 F. Supp. 2d 316, 320 (E.D.N.Y. 2003); <u>Lane-Weber v. Plainedge Union Free School Dist.</u>, 213 A.D.2d 515, 516 (2d Dept 1995); <u>Palmer v. City of New York</u>, 215 A.D.2d 336 (1st Dept 1995).  By citing <u>Mills v. County of Monroe</u>, 59 N.Y.2d 307, 308-09 (1983), defendants appear to rely on New York County Law § 52.  <u>See</u> Defs.' Mem. in Supp. of Summ. J., 11-12, 5:03-CV-1329, Dkt. No. 95-46; Defs.' Mem. in Supp. of Summ. J., 22, 5:06-CV-949, Dkt. No. 35-36.  New York County Law § 52 is much broader in scope and it allows for a notice of claim requirement in more types of claims than General Municipal Law § 50-e.  As the Second Department has stated, "County Law § 52, applies to any claim for invasion of personal or property rights, of every name and nature and to any claim for damages arising at law or in equity."  <u>Picciano v. Nassau County Civil Serv. Comm'n</u>, 290 A.D.2d 16, 170-71 (2d Dept 1995).  However, as this case involves a municipality, instead of a county, General Municipal Law § 50-e, rather than New York County Law § 52, applies.  <u>See</u> <u>Keating v. Gaffney</u>, 182 F. Supp. 2d 278, 290-291 (E.D.N.Y. 2001) ("[E]mployment discrimination claims [brought] against municipal as opposed to county defendants are exempt from the notice of claim requirement.")  Because General Municipal Law § 50-e does not allow for a notice of claim requirement for NYHRL claims, defendants' notice of claim argument fails.

### 2. <u>Standard of Review and Statute of Limitations for NYHRL Claims</u>

Claims under the NYHRL are subject to the burden-shifting analysis established in <u>McDonnell Douglas</u>.  <u>Weinstock</u>, 224 F.3d at 42 n.1 ("The identical standards apply to

employment discrimination claims brought under Title VII   . . . [and] New York Executive Law § 296."). However, "[u]nlike Title VII's 300-day rule, the statute of limitations for actions under New York's Human Rights Law is three years." Van Zant, 80 F.3d at 714 (citing N.Y. Civ. Prac. L. & R. 214(2)). Under the NYHRL, the statute of limitations is measured from the filing of the action in court. See N.Y. Civ. Prac. L. & R. 214(2). Unlike Title VII, under the NYHRL those "personally involved in the discriminatory conduct . . . may be subject to individual liability." Briggs, 233 F. Supp. 2d at 379. However, if there is no viable NYHRL claim against the employer, then individual employees can not be held liable under the statute. Yerry v. Pizza Hut of Se. Kan., 186 F. Supp. 2d 178, 187 (N.D.N.Y. 2002).

### 3. Gender Discrimination

Plaintiff's gender discrimination claims under Title VII that were not-timed barred have already been discussed and summary judgment is warranted regardless of whether they are brought under Title VII or the NYHRL. However, claims that are timely under the statute of limitations for the NYHRL that were not timely under Title VII warrant consideration. Based on the NYHRL's three year statute of limitations and the time frame of the Title VII claims already discussed, the relevant time period is October 30, 2000 until May 23, 2005.

Plaintiffs claims from this time period that affected her job responsibilities consist of: (1) discriminatory assignment of overtime; (2) being relieved of her gun on November 15, 2001; (3) gender discrimination when requiring her to be evaluated by a number of doctors after her treating psychiatrist released her to work; and (4) the discipline plaintiff received.

### a. <u>Overtime Assignments</u>

Like the discussion of overtime assignments supra, plaintiff does not provide evidence of specific instances when she was denied overtime.  However, plaintiff does argue that she was denied overtime generally because her secondary work permits were revoked when she was on leave.  In response, defendants have shown that plaintiff is not treated differently than other officers who are unable to work secondary assignments when on medical leave.  <u>See</u> Smith Aff. ¶ 8, 5:03-CV-1329, Dkt. No. 95-44; Cuelton Reply Aff. ¶ 7, 5:03-CV-1329, Dkt. No. 128-3.  Because plaintiff has not established that she was entitled to secondary work permits while on leave, she has not established her *prima facie* case.  Therefore, plaintiff's NYHRL claim for discrimination arising from the assignment of overtime will not survive summary judgment and this part of plaintiff's Fifth Cause of Action in Suit I and Seventh Cause of Action in Suit II will be dismissed.

### b. <u>Seizure of Plaintiff's Weapon</u>

Plaintiff was relieved of her weapon on the same day she sought psychiatric treatment in relation to the physical altercation with defendant Kaufman.  Plaintiff's own psychiatrist stated that plaintiff should be on medical leave at this time.  Defendants have also provided statements that other officers, including at least one male officer, have been relieved of their weapons while on medical leave.  <u>See</u> Cuelton Aff. ¶ 15, 5:03-CV-1329, Dkt. No. 95-30.  Because plaintiff was placed on psychiatric medical leave and she has not presented evidence that she was treated differently than similarly situated male colleagues, this claim will not survive defendants' motion for summary judgment.

### c. Medical Evaluations and Request for Medical Records

For the same safety reasons discussed supra, defendants' have established a legitimate, non-discriminatory reason why they need for plaintiff's psychiatric medical information. Plaintiff has not shown that these early requests were more likely based on gender discrimination.  Because defendants' have a legitimate reason for their conduct and plaintiff has not established pretext, defendants will be granted summary judgment.

### d. Disciplinary Actions Taken Towards Plaintiff

Plaintiff was disciplined at the end of October 2000.  Plaintiff brought grievances for that discipline and as part of the subsequent settlement, she agreed not to seek legal action. Therefore, plaintiff's October 2000 discipline will not be discussed here.  Plaintiff was also disciplined on August 22, 2001 and June 27, 2003.  Like the claims of gender discrimination discussed under the Title VII analysis, even if plaintiff can establish a *prima facie* case, defendants have shown that plaintiff violated department rules.  Again, plaintiff has not presented sufficient evidence that imposing discipline or the level of discipline was related to gender instead of her actual violations of the rules.  Because plaintiff can not establish pretext, defendants' motion for summary judgment will be granted.

### 4. Retaliation Claims (Suit II)

Because the same standard is applied under Title VII and the NYHRL, plaintiff's NYHRL claim will survive summary judgment to the extent that plaintiff's Title VII retaliation claim survives summary judgment.

### 5. Hostile Work Environment Claim (Suit II)

The legal standard for claims under Title VII and the NYHRL are virtually identical.

Van Zant, 80 F.3d at 714 (internal citation omitted).  Because plaintiff could not establish

defendants' conduct was so severe or pervasive as to constitute a hostile work environment

claim under Title VII against the defendant City of Syracuse, plaintiff's hostile work

environment claim under the NYHRL will also fail.

### 6. Individual Defendants

If there is no viable NYHRL claim against the employer, then individual employees

can not be held liable under the NYHRL.  Yerry, 186 F. Supp. 2d at 187.  For plaintiff's

NYHRL claims that do not survive summary judgment against the defendant City of

Syracuse, individual defendants will also be granted summary judgment.  However, where

plaintiff has a viable retaliation claim, claims against culpable individual defendants can

survive summary judgment.  Here, for the NYHRL retaliation claim, defendant Heenan's

motion will be denied.

### 7. Work Environment, Retaliation, and Disability Discrimination (Suit I)

Plaintiff, in her complaint for Suit I, did not plead causes of action arising under the

NYHRL stemming from a hostile work environment, retaliation, or disability discrimination.

See Pl.'s Am. Compl. ¶ 56, 5:03-CV-1329, Dkt. No. 80.  In her memorandum of law in

opposition to defendants' motion for summary judgment, plaintiff appears to argue that these

NYHRL causes of action should be decided at trial.  See Pl.'s Mem. in Opp'n to Summ. J.,

13-15, 17, 5:03-CV-1329, Dkt. No. 126.  However, as these claims were never pled in Suit I,

these causes of action can not now be asserted for Suit I.

**I.  Breach of Contract Claim (Eighth Cause of Action in Suits I and II)**

Unlike a NYHRL claim, a municipality may raise a plaintiff's failure to file a notice of claim as a defense to a contract claim.  See Davis-Wallbridge, Inc. v. City of Syracuse, 71 N.Y.2d 842 (1988).  In Davis-Wallbridge, the New York Court of Appeals found that for a breach of contract claim, "[c]ompliance with the charter's notice of claim clause, unless waived, is a condition precedent to the commencement of litigation against the City." Davis-Wallbridge, 71 N.Y.2d at 844 (internal citation omitted).  Additionally, the court noted that waiver can not be found unless  "there is an express agreement that [notice of claim] is inapplicable" or "the parties have set out detailed procedures which are plainly inconsistent" with the notice of claim requirement.  Id.

Plaintiff did not file a notice of claim for either Suit I or Suit II.  Further, even though plaintiff argues that this defense was waived because it was not raised earlier in this litigation, that assertion incorrectly applies the Court of Appeals criteria for establishing waiver.  Plaintiff has not presented any evidence that there was an express agreement that a notice of claim was not required or that detailed procedures were established that were plainly inconsistent with a notice of claim requirement.  Therefore, because a municipality may require a notice of claim for a breach of contract claim and plaintiff did not file a notice of claim for either suit or present any evidence of express or implied waiver within the criteria established by the New York Court of Appeals, defendant City of Syracuse will be granted summary judgment for the breach of contract claims.  Additionally, as the individual defendants are not parties to the Union contract, their motions will also be granted.

## IV. **CONCLUSION**

Because plaintiff was unable to establish a *prima facie* claim of Title VII gender discrimination arising from the assignment of overtime and the prohibition against her attending medical appointments while on-duty, defendants' motion for summary judgment will be granted for those claims.  Additionally, since plaintiff was unable to show pretext underlying the disciplinary actions taken against her, defendants' motion for summary judgment will granted for that Title VII claim.  In regards to the hostile work environment claim, defendants' conduct was not sufficiently severe and/or pervasive to survive a motion for summary judgment and defendants' motion will be granted for that claim.  Plaintiff's Title VII retaliation claim against defendant City of Syracuse, however, will survive defendants' motion for summary judgment because plaintiff was able to meet her burden for pretext under the McDonnell Douglas burden-shifting analysis.

Additionally, plaintiff presented sufficient evidence that she may have been perceived as disabled.  That is sufficient under Title I of the ADA, but not Title II.  For her Title I ADA claims, plaintiff has shown that defendants' stated reasons for their actions in 2002 may have been pretext for disability discrimination.  However, because individual defendants are not liable under the ADA, only plaintiff's claim against defendant City of Syracuse will survive defendants' motion for summary judgment.

Plaintiff's § 1983 claim alleging that she was denied her Fourteenth Amendment right of equal protection will be dismissed for the same reasons as her Title VII gender discrimination and hostile work environment claims.  Additionally, defendants' motion for

summary judgment will be granted as to plaintiff's conspiracy claim because employees of a single entity are legally incapable of conspiring under § 1983.

As for the § 1983 First Amendment claim, all of the individual defendants except defendant Heenan will be granted summary judgment based on qualified immunity. Plaintiff's § 1983 First Amendment Claim against defendant City of Syracuse will survive summary judgment because plaintiff has submitted sufficient evidence to raise questions of material facts as to whether the SPD had a policy or custom to retaliate against those who complained of discrimination.  Additionally, to the extent that plaintiff has a viable Title VII retaliation claim against defendant City of Syracuse, defendants' motion to dismiss plaintiff's NYHRL claim against the City and defendant Heenan will be denied.

Defendants' motions for summary judgment for plaintiff's claims under New York contract law will be granted because plaintiff did not file a notice of claim.  Finally, defendants' motions will also be granted for plaintiffs' EPA claims because plaintiff has not submitted evidence that she was paid at a different wage rate.

Accordingly, it is

ORDERED that

1. Defendant Syracuse Police Department's motions for summary judgment are GRANTED for all of plaintiff's claims, and all claims against the Syracuse Police Department are DISMISSED.

2.  The individual defendants' motions for summary judgment for plaintiff's Title VII claims are GRANTED, and plaintiff's Title VII claims against individual defendants are DISMISSED.

3.  Defendant City of Syracuse's motion for summary judgment for plaintiff's Title VII claims is GRANTED in part and DENIED in part.

a) Defendant City of Syracuse's motion is GRANTED for plaintiff's Title VII gender discrimination, hostile work environment claims, and retaliation claims arising from conduct before May 24, 2005.

b) Defendant City of Syracuse's motion is DENIED for plaintiff's Title VII retaliation claims arising from conduct after May 24, 2005.

4.  The individual defendants' motions for summary judgment for plaintiff's ADA claims are GRANTED, and plaintiff's ADA claims against individual defendants are DISMISSED.

5.  Defendant City of Syracuse's motion for summary judgment for plaintiff's ADA claims is GRANTED in part and DENIED in part.

a) Defendant City of Syracuse's motion is GRANTED for plaintiff's Title II ADA claims.

b) Defendant City of Syracuse's motion is DENIED for plaintiff's Title I ADA claims.

6.  Defendants' motions for summary judgment for plaintiff's § 1983 claims are GRANTED in part and DENIED in part.

a) Defendants' motions are GRANTED for plaintiff's § 1983 claims arising under Equal Protection and Conspiracy.

b) Defendants' motions are GRANTED for plaintiff's § 1983 claims arising under the First Amendment against all individual defendants except defendant Heenan.

c) Defendants' motions are DENIED for plaintiff's § 1983 claims arising under the First Amendment against defendant Michael Heenan and defendant City of Syracuse.

7.  Defendants' motions for summary judgment for plaintiff's EPA claims are GRANTED, and plaintiff's EPA claims against all defendants are DISMISSED.

8. Defendants' motions for summary judgment for plaintiff's NYHRL claims are GRANTED in part and DENIED in part.

a) Defendants' motions are GRANTED for plaintiff's NYHRL claims for gender discrimination and hostile work environment.

b) Defendants' motions are GRANTED for plaintiff's NYHRL claims for retaliation for all individual defendants except defendant Michael Heenan.

c) Defendants' motions are DENIED for plaintiff's NYHRL claims for retaliation for defendant Michael Heenan and defendant City of Syracuse.

9. Defendants' motions for summary judgment for plaintiff's breach of contract claims are GRANTED, and plaintiff's breach of contract claims against all defendants are DISMISSED.

10.  The Second, Fifth, Sixth, and Eighth causes of action in Suit I and the First, Second, Fifth, Sixth, Eighth, and Tenth Causes of Action in Suit II are DISMISSED in their entirety.

11.  Both complaints in their entirety are DISMISSED against defendants the Syracuse Police Department, Michael Kerwin, Thomas Galvin, John Falge, Mark McArdle, Captain Ronald Pugh, Daniel Boyle, Deputy Chief Hanna, John Kaufman, Dennis Duval, Gary Miguel, Steve Thompson, Michael Rathbun, and Richard Douglas.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 25, 2009
        Utica, New York.

        The following issues remain to be resolved at trial: (1) liability and damages, if any, against the City of Syracuse for plaintiff's Title VII retaliation claim arising out of conduct after May 24, 2005 (third cause of action in Suit II); (2) liability and damages, if any, against the City of Syracuse for plaintiff's Title I ADA claim (fourth cause of action in Suit I); (3) liability and damages, if any, against the City of Syracuse for plaintiff's § 1983 claims arising under the First Amendment (seventh cause of action in Suit I and fourth and ninth causes of action in Suit II); (4) liability and damages, if any, against defendant Michael Heenan for plaintiff's § 1983 claims arising under the First Amendment (fourth and ninth causes of action in Suit II); and (5) liability and damages, if any, against defendant City of Syracuse and defendant Michael Heenan for plaintiff's  NYHRL claims for retaliation (seventh cause of action in Suit II).